UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN P. O'NEILL, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:10-CV-00898 (JCH) |
| v. | : | |
| | : | JUNE 13, 2011 |
| RIVERSOURCE LIFE INSURANCE | : | |
| COMPANY F/K/A IDS LIFE | : | |
| INSURANCE COMPANY, | : | |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)**

**I.  INTRODUCTION**

Plaintiff, Susan P. O'Neill brings this action against defendant, RiverSource Life Insurance Company ("RiverSource"), alleging that RiverSource breached its contract with O'Neill when it refused to pay O'Neill's disability claim. RiverSource now moves under Fed. R. Civ. P. 56, seeking summary judgment in its favor. For the following reasons, the court denies RiverSource's Motion for Summary Judgment.

**II.  FACTUAL BACKGROUND**[1]

On January 15, 1997, RiverSource's predecessor in interest, IDS Life Insurance Company, issued a disability income insurance policy to O'Neill ("the Policy"). Plaintiff's Local Rule 56(a)(1) Statement ¶ 1 (hereafter "L.R. 56(a)(1) Stmt."). Pursuant to the Policy, O'Neill agreed to pay an annual premium of $1,150.88 in exchange for RiverSource's promise that, if she were to become totally disabled as defined by the Policy, RiverSource would pay her a Basic Monthly Income of $3,000. Answer ¶ 5.

---

[1] The court sets forth here the material facts not in dispute and facts proposed by the plaintiff that are supported by evidence in the record.

1

O'Neill began experiencing dizziness in July 2008. O'Neill Dep. at 41:21–24; O'Neill Aff. ¶ 4. Originally, O'Neill believed her symptoms would subside on their own, as she had experienced similar symptoms three years earlier, which had abated without treatment. O'Neill Dep. at 59:2–8. Over the next several months, however, O'Neill's symptoms became worse, and she visited her doctor on November 20, 2008. O'Neill Aff. ¶ 8.

O'Neill continued working through November 24, 2008, in spite of her dizziness. O'Neill Aff. ¶ 7. On November 24, 2008, O'Neill's symptoms interfered with her ability to communicate clearly during a client meeting. Id.

On December 8, 2008, O'Neill notified RiverSource of her intention to file an initial claim of disability under the Policy. Id. ¶ 8. The parties dispute whether this notification was oral or written. L.R. 56(a)(1) Stmt. ¶ 4; Plaintiff's Local Rule 56(a)(2) Statement ¶ 4 (hereafter "L.R. 56(a)(2) Stmt."). The parties agree, however, that O'Neill did not submit the "Insured's Initial Claim of Disability" form, the "Job Description and Educational Background" form, and the "Attending Physician's Initial Statement of Disability" form to RiverSource until February 16, 2009. L.R. 56(a)(1) Stmt. ¶ 5.

O'Neill began seeking treatment on November 20, 2008, but was not correctly diagnosed until she visited a neurologist on February 9, 2009. See Pl.'s Mem. Opp. Def.'s Mot. Summ. J. (hereafter "Pl.'s Mem. Opp") at 3–4; O'Neill Aff. ¶¶ 8–10, 17. In the interim, O'Neill visited an ear, nose, and throat specialist and underwent treatment that proved unsuccessful. Pl. Mem. Opp. at 4; O'Neill Dep. 56:24–25; 57:2–8. In addition, O'Neill visited two defense examiners and underwent a CT Scan at RiverSource's request during their investigation into her claim. Pl. Mem. Opp. at 11; Pl.

2

Mem. Opp., Ex. 5; Pl. Mem. Opp., Ex. 6. RiverSource does not address these contentions in its Reply. On October 7, 2009, RiverSource notified O'Neill by letter that it had denied her claim for disability insurance benefits after finding that she was not unable to perform the duties of her occupation. Answer ¶ 10.

### III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d

3

Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

IV.   DISCUSSION

The court can not grant summary judgment in favor of RiverSource because there is evidence before the court on which a reasonable jury could find in O'Neill's favor on the issues raised by RiverSource. First, a reasonable jury could find that O'Neill was not totally disabled under the terms of the Policy until February 9, 2009, and consequently, her written notice to RiverSource was timely when she filed it on February 16, 2009. Second, even if a jury were to find O'Neill had become disabled at an earlier date, but failed to provide written notice until February 16, 2009, the jury could find that O'Neill's failure to comply with the written notice requirement in the Policy did not materially prejudice RiverSource.

   A.   Timely Written Notice

A court must interpret an insurance contract according to the real intent of the parties as expressed through the language of the contract, giving the words of the contract their natural and ordinary meaning. See Enviro Express, Inc. v. AIU Ins. Co., 279 Conn. 194, 199 (2006). If a term of the contract is ambiguous, however, its meaning becomes a question of fact. See David M. Somers & Assoc., P.C. v. Busch, 283 Conn. 396, 403 (2007). Under the terms of the Policy, "disabled" means "Total Disability." See Def.'s Mem. Supp. Summ. J., Ex. B at 5. "Total Disability means that because of [i]njury or [s]ickness, [a person is]: under the regular and personal care of a

4

licensed Physician . . . and [i]n the first five years of such disability, unable to perform the material and substantial duties of [his or her] [r]egular [o]ccupation." Id. The parties do not define what constitutes "regular and personal care of a licensed Physician." Pursuant to a separate provision, the insured is required to give "written notice" of a claim "[w]ithin 30 days after disability begins (or as soon as reasonably practicable)." Id. at 10.

For the purposes of this Motion, RiverSource argues that, at the latest, O'Neill became disabled on November 24, 2008, when she could no longer perform the duties of her occupation as an architectural designer.[2] See Def.'s Reply Summ. J. at 3. This contention, however, fails to account for the requirement that the insured be under the regular care of a doctor in order to be totally "disabled." See Def.'s Mem. Supp. Summ. J., Ex. B at 5. O'Neill demonstrates that, although she first sought medical attention regarding her dizziness on November 20, 2008, she did not receive a diagnosis of her condition until February 9, 2009. See Pl.'s Mem. Opp. at 3–4. During the time between these two dates, O'Neill consulted with an ear, nose, and throat specialist who misdiagnosed her condition and prescribed a treatment that proved unsuccessful. Id. at 4. Further, O'Neill contends that she was not properly diagnosed until February 9, 2009, when a neurologist diagnosed her with vertigo. Id. at 4. A reasonable jury could find that, to be "under the regular and personal care" of a doctor, an individual must

---

[2] RiverSource seems to contend that O'Neill became disabled beginning July 29, 2008, when her symptoms began. L.R. 56(a)(1) Stmt. ¶ 2. There is evidence on the record (e.g., she continued to work until November), however, that O'Neill may not have been disabled until November at the earliest. This evidence creates an issue of material fact. See O'Hara v. Nat'l Union Fire Ins. Co., No. 10-1433, slip op. at 1481–83 (2d. Cir. April 14, 2011) ("If there is a genuine dispute about whether the employee was disabled, this question is for the factfinder.").

5

have received an accurate diagnosis and be undergoing treatment for that diagnosis. Consequently, a reasonable jury could find, based on the evidence in the record now before the court, that although O'Neill's condition prevented her from performing the duties of her job beginning November 24, 2008, she was not "disabled" under the terms of the Policy until February 9, 2009, when a doctor diagnosed her condition and began treatment, thereby placing her "under the regular and personal care" of a doctor. It follows that a jury could reasonably find that, in providing written notice one week later on February 16, 2009, O'Neill timely provided written notice to RiverSource "as soon as practicable."

> B. Lack of Material Prejudice

In general, a court must enforce contract provisions as written: each party is bound by the provisions it agreed to upon executing the contract. See Aetna Cas. & Sur. Co. v. Murphy, 206 Conn. 409, 412 (1988). Under certain circumstances, however, Connecticut law excuses a party that failed to provide an insurance company with written notice of a claim as required by the terms of the contract. See id. at 417–18. Although a provision requiring the insured to provide written notice of a potential claim protects the insurer's legitimate interest in guarding against stale claims, a court must balance this interest against the insured's interest in avoiding forfeiture. See id. at 415–17. The insurer enjoys a presumption of prejudice when the insured fails to comply with a written notice requirement in a timely fashion. See Hotkowski v. Aetna Life & Cas. Co., 224 Conn. 145, 148–49. The insured then bears the burden to rebut this presumption by demonstrating that, despite this failure, the insurer suffered no material prejudice. See id. at 149.

6

Assuming a jury determined that O'Neill became disabled prior to February 9, 2009, and did not provide written notice to RiverSource until February 16, 2009, the jury could still find that RiverSource suffered no material prejudice from the delay. A central purpose for requiring written notice of a potential claim is to allow an insurance company to investigate claims promptly. See Aetna, 206 Conn. at 417. The parties do not dispute that O'Neill provided RiverSource with notice of a potential claim on December 8, 2008.[3] L.R. 56(a)(1) Stmt. ¶ 3; L.R. 56(a)(2) Stmt. ¶ 3. RiverSource acknowledged the same in a letter to O'Neill dated December 10, 2008. Pl. Mem. Opp., Ex. 3. Over the next several months, RiverSource conducted an investigation that required O'Neill to visit two defense examiners and undergo a CT scan. Pl. Mem. Opp., Ex. 5; Pl. Mem. Opp., Ex. 6. The parties agree that on October 7, 2009, O'Neill received a letter from RiverSource notifying her that RiverSource had denied her claim. Answer ¶ 10.

Given that RiverSource had some kind of notice of the claim by December 8, 2008, and conducted an investigation that lasted through October of the following year, O'Neill has presented evidence that creates a genuine issue for trial, namely whether RiverSource suffered any material prejudice as a result of O'Neill's failure to provide written notice in a timely fashion. See Aetna, 206 Conn. at 223.

---

[3] The parties dispute whether O'Neill's initial notice to RiverSource on December 8, 2008 was oral or written. L.R. 56(a)(1) Stmt. ¶ 4; L.R. 56(a)(2) Stmt. ¶ 4. For the purposes of this section, the court will assume the notice was oral and not written. If the notice were written, the contract term would clearly be met.

## V. CONCLUSION

For the reasons listed above, the court denies defendant's Motion for Summary Judgment (Doc. No. 38).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of June, 2011.

                                      /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge